# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **CONNIE REGULI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00896** |
| | ) | **Judge Aleta A. Trauger** |
| **LORI RUSS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Plaintiff Connie Reguli filed suit under 42 U.S.C. § 1983 on November 7, 2022 against Defendants Brentwood Police Department Detective Lori Russ, the Brentwood Police Department (BPD), and the City of Brentwood, alleging violations of her rights under the First and Fourth Amendments to the United States Constitution.[1] (Doc. No. 1.) Now before the court are the plaintiff's timely Objections (Doc. No. 28) to the Magistrate Judge's Report and Recommendation ("R&R") (Doc. No. 26), which recommends that the defendants' Motion to Dismiss be granted on the grounds that the plaintiff's claims are time-barred. The defendants filed a Response to the Objections. (Doc. No. 31.)

For the reasons set forth herein, the plaintiff's Objections will be overruled. In addition, because the Motion to Amend (Doc. No. 29) filed after the R&R is futile, that motion will be denied, and this case will be dismissed in its entirety as time-barred.

---

[1] The Complaint also asserted a claim based on the violation of the plaintiff's rights under the Fourteenth Amendment, but the plaintiff has now agreed to dismiss that claim.

## I. LEGAL STANDARDS

### A. Rule 72(b)

Within fourteen days after being served with a report and recommendation as to a dispositive matter, any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

The court's review of a non-dispositive pretrial ruling is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review."). "A finding [of fact] is 'clearly erroneous' when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Adams Cty. Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). For purposes of this standard, a legal conclusion is contrary to law if it "contradict[s] or ignore[s] applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (quoting *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 205 (N.D. Cal. 1983)).

### B. Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in

the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Although Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim," "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause," or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Generally, if "matters outside the pleadings are presented to and not excluded by the court," a motion under Rule 12(b)(6) must be "treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, a court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. updated Apr. 2022) ("Numerous cases . . . have allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits

attached to the complaint whose authenticity is unquestioned . . . without converting the motion into one for summary judgment.").

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Complaint filed on November 7, 2022 goes into great detail about the plaintiff's private practice as an attorney and her social activism, public speaking, and lobbying efforts, in which she has frequently "express[ed] her disdain [for] and distrust of government agents," including agents of the Department of Children's Services ("DCS") and the courts. (Doc. No. 1, at 2.) She alleges that she changed her Facebook settings to "private" when she became aware that "government employees were stalking her social media." (*Id.*) She asserts that she has a reasonable expectation of privacy in her private Facebook communications and that her speech against government is protected by the First Amendment. (*Id.* at 2–3.)

In August 2018, Reguli was the attorney for an individual named Wendy Hancock. Based on events that took place in August 2018, Hancock was charged with felony "custodial interference," in violation of Tenn. Code Ann. § 39-13-306, and, in July 2019, Reguli was indicted on a charge of felony accessory after the fact to that charge. The investigation into these charges was initiated by a complaint made by a DCS attorney in September 2018. Defendant Russ was the detective who investigated the complaint. (*Id.* at 6 ¶¶ 1–2.)

On December 4, 2018, Russ prepared a sworn affidavit for a search warrant for the plaintiff's Facebook account, and a Williamson County Circuit Court judge issued the warrant the same day. Copies of the Affidavit and Search Warrant are attached as exhibits to the Complaint. (Doc. No. 1-1, at 3–9.) The Affidavit stated that the Warrant was necessary to the investigation into the criminal conduct of custodial interference. (*Id.* at 5.) The plaintiff alleges that, during the time just prior to seeking a search warrant, Russ "had ongoing communications with others who wanted to silence Plaintiff Reguli." (Doc. No. 1, at 7 ¶ 4.) The plaintiff asserts that the "search

warrant ultimately meant nothing to the criminal prosecution but allowed Russ and the others named to examine" the plaintiff's personal communications. (*Id.*)

The Search Warrant was served, and the documents it requested were obtained, in January 2019. (*Id.* at 10 ¶ 13; *see also* Doc. No. 1-1, at 9.) The documents included the plaintiff's private Facebook postings and messages. The plaintiff became aware of the criminal investigation into her activities around the end of January 2019. She requested documents related to the investigation directly from the BPD during the spring of 2019 but did not receive any responsive documents.

The plaintiff was indicted by a Williamson County Grandy Jury in July 2019, charging her with accessory after the fact of custodial interference. She states that she received discovery relating to the indictment from the district attorney in January 2020. She expressly alleges that she discovered at that time—in January 2020—that Russ had obtained the Search Warrant for her Facebook account in December 2018. (*Id.* at 11 ¶ 19.)

The plaintiff states that, "upon receipt of the indictment," she immediately realized that it was fatally flawed, insofar as it did not track the language of the statute defining and criminalizing "custodial interference" and, in fact, omitted an essential element of the crime. (*Id.* at 11 ¶ 20; *see also* Doc. No. 28, at 4.) The presiding judge, however, refused to dismiss the indictment and also charged the jury consistently with the wording of the indictment, rather than tracking the statutory definition of the charge. Hancock went to trial in July 2021; Reguli's trial took place in April 2022. Both were convicted, and both appealed on the basis of the unwarranted extension of the statute well beyond the bounds of its actual terms. Russ testified at both trials, and she did not introduce into evidence any data she had received from the Search Warrant served on Facebook.

On June 24, 2022, Russ testified at Reguli's sentencing hearing. At this hearing, Russ testified that she had obtained a search warrant for Reguli's Facebook account. Asked why, she testified:

> Because of the things that she would put out on Facebook. Facebook Live, YouTube. [Reguli] was very blatantly mocking the whole process. From the beginning up until even after she was convicted, she was very blasé. [She] mocked the police. [She] accused myself personally of being involved in some sort of scheme and essentially questioning my integrity as a police officer . . . . And it's been a consistent theme the whole time about it's a conspiracy against her, that we're after her because [she] is a squeaky wheel. And I felt like it was relevant to [Reguli's] actions.

(Doc. No. 1, at 13 ¶ 23; *see also* Doc. No. 1-1, at 13.) On cross-examination, Russ further explained why she continued to follow Reguli on Facebook and social media "even after the trial," stating:

> Because Ms. Reguli has repeatedly besmirched the people that were involved in this case and myself included. She posted things to the Brentwood Police Department's Facebook page about me. I wanted to know if she was talking about me personally, because it's an attack on my integrity . . . .

(*Id.* at 13 ¶ 24.) She agreed with Reguli's attorney that the matter was "kind of personal." (*Id.* at 13 ¶ 24.) According to the plaintiff, Russ's June 24, 2022 testimony "showed the true intent and purpose of obtaining a search warrant" and thus "triggered" the cause of action against Russ. (*Id.* at 14 ¶ 31.) More specifically, Russ purportedly "obtained the Facebook subpoena [sic] under false pretenses and on improper motives. She used the search warrant as First Amendment retaliation against Reguli." (*Id.*) In addition, because she failed to narrow the scope of the information sought, she used the Search Warrant "as a fishing expedition violating Reguli's Fourth Amendment rights." (*Id.*) The plaintiff further alleges that Russ

> used her testimony to intentionally enhance the sentencing of Reguli. Such conduct by Defendant Russ was an 'adverse action that would deter a person of ordinary firmness from continuing to engage" in First Amendment protected speech. This violated Plaintiff's First Amendment rights and was intended to intimidate Reguli from further public discourse.

(*Id.* at 15 ¶ 32.)

The Complaint also refers to unnamed potential "Cat's Paw" defendants, suggesting that Russ was "influenced by other state actors" to violate Reguli's constitutional rights. She speculates about who these individuals manipulating Russ might be, referencing other events in which she had been involved that might have caused various state actors to consider her criticism of the government to be a nuisance. (*Id.* at 16–19, ¶¶ 34(a)–(n).) Although she identifies eighteen potential "Cat's Paw" defendants, including various DCS attorneys, three assistant district attorneys, five state court judges, and three private attorneys (*id.* at 19 ¶ 36), none of these individuals is actually named as a defendant in this case. The plaintiff simply alleges that Russ's objective in obtaining the Search Warrant for the plaintiff's Facebook account was "likely suggested or motivated" by one or more of these individuals who wanted to silence the plaintiff from "raising social justice issues" and defending her clients' civil rights. (*Id.* at 20 ¶ 37.)

The plaintiff acknowledges that these background facts have "little relevance to this action, in that the admissions of Defendant Lori Russ in the Plaintiff's sentencing hearing are sufficient evidence of the constitutional violations." (*Id.* at 6.) She also expressly asserts that the claims under § 1983 arising from Russ's act of obtaining a search warrant in December 2018 did not accrue until June 24, 2022, when defendant Russ "admitted" that the "real purpose of the search warrant" was to "see the bad things Reguli was saying about her and [the] police department" in her private social media posts. (Doc. No. 1, at 4.)

The plaintiff's First and Fourth Amendment claims are articulated as follows:

First Amendment – Retaliation – Defendant Russ intentionally took an action to deter Plaintiff from engaging in public discourse through social media. She disclosed in her testimony that she intended to use this to enhance the sentencing of Reguli.

. . . .

Fourth Amendment – Unreasonable search and seizure – Defendant Russ articulated a false motive in the search warrant obtained December 4, 2018 which was not established until her testimony on June 24, 2022.

(Doc. No. 1, at 21.)

In response to the Complaint, the defendants filed a joint Motion to Dismiss and supporting Memorandum, arguing, among other things, that it is clear from the face of the Complaint that the plaintiff's claims are barred by the one-year statute of limitations that applies to actions under 42 U.S.C. § 1983. The defendants argue that Russ's motivation in obtaining the Search Warrant has no bearing on whether it was supported by probable cause, and the plaintiff clearly was on notice when she received a copy of the Search Warrant in January 2020 as to whether it was supported by probable cause. The defendants also argue that Russ's testimony in June 2022 has no bearing on whether the Search Warrant, when issued, violated Reguli's First Amendment rights, and that the plaintiff clearly knew of her injury—the search of her Facebook account under the Search Warrant—in January 2020, when she obtained discovery from the prosecuting attorney.

In her Response Memorandum, Reguli argues that (1) her Fourth Amendment claim did not arise prior to Russ's June 24, 2022 testimony because, even if the Search Warrant Affidavit was "overly broad" on its face and "did not meet the threshold for probable cause and particularity," she would not have been able to prove her entitlement to compensatory damages until later; (2) the plaintiff was not on notice that the Search Warrant constituted a violation of her right to privacy, First Amendment retaliation, and retaliatory investigation until Russ testified at the sentencing hearing on June 24, 2022 as to her motive for seeking the Search Warrant. (Doc. No. 18.) Reguli argues that the court must consider (1) whether the goals of § 1983 would be frustrated by application of the statute of limitations to her claims; (2) whether the discovery rule applies to extend the accrual of the statute of limitations; and (3) whether Russ's fraudulent concealment of material facts warrants tolling the statute of limitations. (Doc. No. 18, at 5.)

The defendants filed a Reply, refuting each of the plaintiff's arguments. (Doc. No. 20.)

Following briefing on the Motion to Dismiss, the plaintiff filed two separate Motions to Supplement her Response, both of which were granted by the Magistrate Judge as unopposed. (Doc. Nos. 21–24.) In the second Motion to Supplement, Reguli asks the court to "consider . . . newly discovered facts," specifically, the fact that the Tennessee Court of Appeals reversed Wendy Hancock's conviction for custodial interference in May 2023. (Doc. No. 23, at 1 (citing *State v. Hancock*, No. M2022-00483-CCA-R3-CD, 2023 WL 3413599, at *7 (Tenn. Ct. Crim. App. May 12, 2023)).)[2]

In the first Motion to Supplement, Reguli asks the court to consider as evidence—again in support of her assertion that the "crime" being investigated by Russ was not a crime at all— (1) legislation introduced in the Tennessee legislature, HB 1099, to amend the statutory definition of the crime of custodial interference[3] and (2) an article published in the Tennessee Conservative on February 15, 2023 about that proposed bill.

---

[2]In *Hancock*, the Tennessee Court of Appeals found that the instruction given to the jury on custodial interference "clearly differ[ed]" from the instruction proposed by the defendant, the government at trial, and the pattern jury instruction, eliminated a essential element of the charge, and constituted an incorrect statement of the law. *State v. Hancock*, No. M2022-00483-CCA-R3-CD, 2023 WL 3413599, at *7 (Tenn. Crim. App. May 12, 2023). The court also noted that, "if the trial court had charged the jury with all of the statutory elements of the offense, . . . the evidence would never have been sufficient to support a conviction for custodial interference." *Id.* at *11. The plaintiff argued in her Motion to Supplement that the holding of the Tennessee Court of Appeals establishes that "Defendant Russ was not investigating a 'crime' at all" and therefore cannot rely on the defense that there was probable cause for execution of the search warrant. (Doc. No. 23, at 1.) Reguli asserts that the reversal of Hancock's conviction necessarily will lead to the reversal of her conviction as an accessory after the fact, but it has not yet been reversed.

[3] The Tennessee legislature actually amended the custodial interference statute, Tenn. Code Ann. § 39-13-306, in April 2023 to affirmatively adopt the interpretation of the statute reflected in the trial court's jury instructions and rejected by the Tennessee Court of Appeals in *Hancock. See* S.B. No. 1319, 113th Gen. Ass. (April 2023), 2023 Tennessee Laws Pub. Ch. 286. The plaintiff argues that the amendment further establishes that her conduct in August 2018 was not criminal under the statute in place at that time.

The R&R, as set forth above, recommends that the Motion to Dismiss be granted on the grounds that the plaintiff's claims are time-barred, without reaching the defendants' other arguments. In making that determination, the Magistrate Judge also found that:

(1) the exhibits attached to Reguli's Complaint should not be taken into consideration for purposes of ruling on the Motion to Dismiss, except insofar as they (or portions of them) are actually quoted in the Complaint (Doc. No. 26, at 10), and the documents submitted by the plaintiff with her Motions to Supplement her Response in Opposition to the Motion to Dismiss should not be considered at all;

(2) assuming without deciding that the "discovery rule" applies, Reguli's claims under § 1983, based on violations of her rights under the First and Fourteenth Amendments to the United States Constitution, accrued no later than January 2020, when Reguli learned about the search warrant that forms the basis for her claims, and not in June 2022, when defendant Russ testified as to her subjective motives for obtaining the search warrant at the plaintiff's sentencing hearing;

(3) the plaintiff provides no public policy basis for deviating from the limitations applicable to § 1983 actions arising in Tennessee or for applying some other unspecified limitations period;

(4) the plaintiff fails to allege facts supporting the application of the doctrine of fraudulent concealment to toll the statute of limitations; and

(5) the plaintiff's allegations regarding "Cat's Paw" defendants are "too attenuated from Reguli's § 1983 claims to establish fraudulent concealment that would toll the statute of limitations." (Doc. No. 26, at 16.)

The plaintiff filed specific Objections (Doc. No. 28) to the R&R, objecting in particular to the Magistrate Judge's (1) refusal to consider the documents filed with Reguli's unopposed Motions to Supplement, even after granting those motions; (2) application of the Discovery Rule to find both the First and Fourth Amendment claims to be time-barred and her purported failure to consider the First Amendment claim separately from the Fourth Amendment claim; and (3) refusal to find the statute of limitations tolled by the fraudulent concealment rule. The plaintiff also argues that the Magistrate Judge erred in finding that the Complaint does not allege that the Search Warrant lacked probable cause and that this error is somehow connected to her error in finding

that there is no basis for tolling the statute of limitations based on fraudulent concealment. She also contends that the Magistrate Judge erred in finding that the plaintiff's allegations regarding her "Cat's Paw" theory were not relevant to the fraudulent concealment analysis.

The plaintiff, after filing her Objections to the R&R, also filed a Motion and Memorandum to Amend Complaint. (Doc. No. 29.) She expressly asks the court to consider that motion before ruling on her Objections to the R&R. (*Id.* at 2.) Despite arguing in her Objections that she *did* adequately allege in the original Complaint that the Search Warrant was not supported by probable cause, she now argues in the Motion to Amend that, although she alleged in the original Complaint that the underlying criminal indictment was "fatally flawed"—and she knew it was fatally flawed—from the beginning, she was "unable, at the time of filing the Complaint to state with certainty that Defendant Russ LACKED PROBABLE CAUSE for the search warrant because THERE WAS NO CRIME." (Doc. No. 29, at 2.) Now that the Tennessee Court of Appeals has issued an opinion reversing Hancock's conviction, she seeks to amend her pleading to affirmatively aver that Russ lacked probable cause to obtain the Search Warrant in the first place. (*See* Doc. Nos. 29 (Motion and Memorandum), 30 (proposed Amended Complaint).)

## III.    DISCUSSON

### A.    Consideration of Matters Outside the Pleadings

Reguli argues that the Magistrate Judge erred in refusing to consider the supplementary material she filed, and she argues that the *defendants'* argument for dismissal "hinges on the assertions that Russ was investigating a crime" for which there was both probable cause and a legitimate basis for investigation. According to the plaintiff, as suggested above, the reversal of Hancock's conviction and the amendment of the custodial interference statute together establish that there was no crime and, therefore, no probable cause, as a result of which Russ's argument "must fail as a matter of law." (Doc. No. 28, at 9.)

Regarding this objection, the court agrees with the plaintiff that it is not inappropriate to take judicial notice that Hancock's conviction has been overturned based on an improper jury instruction, which is a matter of public record. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record . . . also may be taken into account." (citation omitted). Likewise, the Tennessee legislature's amendment of a statute is a matter of public record of which the court may take judicial notice.

That said, however, the inferences the plaintiff seeks to have the court draw from these matters are not necessarily a matter of public record. Moreover, the court cannot find that these matters have any effect on the question of whether the plaintiff's claims, when filed, were already time-barred, as discussed herein. Thus, while the Magistrate Judge likely could have exercised her discretion to consider these matters of public record, it was not an abuse of discretion to decline to consider them.

### B. The First Amendment Claim

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). Thus, if a government official "takes adverse action against someone based on that forbidden motive," and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may bring a First Amendment claim against the official. *Id.* (quoting *Hartman*, 547 U.S. at 256). To establish the requisite causal connection, a plaintiff must show that the protected speech was the "but-for" cause of the adverse action, "meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (citation omitted). In the context of retaliatory prosecution and retaliatory arrest, the Supreme

Court has held that the plaintiff, to prevail, must plead and prove that the prosecution or arrest was without probable cause. *Hartman*, 547 U.S. at 265—66; *Nieves*, 139 S. Ct. at 1723–24.

In the present case, the plaintiff is alleging that Russ obtained the Search Warrant in retaliation for the plaintiff's having engaged in protected speech. (*See* Doc. No. 1, at 5 ("[T]he search warranted violated the . . . Plaintiff's right to free speech. Defendant Russ's search warrant was used to intimidate and threaten Plaintiff against public criticism of public officials.").)[4] The court finds that the holding in *Nieves*, which involved an allegedly retaliatory arrest, logically extends to a claim that a search warrant was retaliatory, such that the plaintiff must, as a threshold matter, plead and prove that the search warrant was issued without probable cause as an essential element of the claim.

In the present case, the plaintiff's Objections to the Magistrate Judge's determination that her "retaliatory search warrant" claim is time-barred raise three distinct issues: (1) when did the claim accrue; (2) whether Reguli alleged an absence of probable cause to support the search warrant; and (3) whether the running of the limitations period should be tolled for some period of time.

---

[4] The plaintiff plainly is *not* asserting a claim for malicious prosecution in retaliation for her exercise of First Amendment rights, because her claim is specifically premised upon the Search Warrant itself, not her prosecution. If she had brought such a claim, it would be time-barred, because it accrued in July 2019, when the prosecution was initiated. *Accord Rapp v. Putman*, 644 F. App'x 621, 625 (6th Cir. 2016) (holding that, unlike a malicious prosecution claim, a retaliatory prosecution claim accrues when the prosecution is initiated and does not require the plaintiff to prove favorable termination of the prosecution). Insofar as the plaintiff might be attempting to bring a First Amendment retaliation claim based on Russ's testimony at the sentencing hearing, on the basis that the testimony itself was intimidating or retaliatory, Russ is entitled to absolute immunity in connection with her testimony at Reguli's sentencing hearing. *See Briscoe v. LaHue*, 460 U.S. 325, 328 (1983) (affirming that "all witnesses—police officers as well as lay witnesses— are absolutely immune from civil liability based on their testimony in judicial proceedings").

1.    *Accrual of the Claim*

The plaintiff takes no issue with the Magistrate Judge's ruling, as a matter of law, that the one-year statute of limitations set forth in Tenn. Code Ann. § 23-3-104(a)(1)(A) applies to the plaintiff's claims under § 1983. Federal law, however, governs the question of when a federal cause of action accrues. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021). The Sixth Circuit has long held that the so-called "discovery rule" applies to the accrual of § 1983 claims—that is, that "a § 1983 federal civil rights claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). As the Sixth Circuit has stated:

> A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. In this objective inquiry, courts look to what event should have alerted the typical lay person to protect his or her rights. At that point, the plaintiff has a complete and present cause of action, such that he can file suit and obtain relief.

*Id.* (internal quotation marks and citations omitted). The court recently reconfirmed that the discovery rule applies to claims based on federal statutes, like § 1983, that do not contain their own statute of limitations. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022), *cert. denied sub nom. The Ohio State Univ. v. Steve Snyder-Hill*, 143 S. Ct. 2659 (2023).[5]

---

[5] *Snyder-Hill* involved the application of the discovery rule to a case under Title IX which, like § 1983, does not contain its own statute of limitations. However, the court made it clear that its holding applied equally to claims under § 1983. *See Snyder-Hill*, 48 F.4th at 698 (noting that the "application of the discovery rule in the § 1983 context guide[d its] analysis [in that case] because [t]he analysis concerning when the statute of limitations [for a Title IX claim] began to run is the same as [for a § 1983 claim]." (citation and internal quotation marks omitted; some alterations in original)). The court also characterized as *dicta* its "speculation" in *Dibrell* that "*Rotkiske* might prompt reconsideration of the discovery rule" in § 1983 cases. *Id.* at 700 (quoting *Dibrell*, 984 F.3d at 1162).

As the Magistrate Judge also noted, a motion to dismiss is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Jodway v. Orlans, PC*, 759 F. App'x 374, 379 (6th Cir. 2018) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). This is because the statute of limitations is an affirmative defense, for which the defendant bears the burden of proof. *Id.* Accordingly, a motion to dismiss on statute of limitations grounds should only be granted "if the allegations in the complaint affirmatively show that the claim is time-barred." *Id.* (quoting *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)).

Applying these standards, the court finds no legal error in the Magistrate Judge's determination that the plaintiff's First Amendment claim accrued when she discovered her *injury*. *See Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763–64 (6th Cir. 2017) ("Under the discovery rule, the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." (internal quotation marks and citation omitted)). The Supreme Court has noted that, "in applying a discovery accrual rule, [it has] been at pains to explain that discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock," even if "considerable enquiry and investigation may be necessary" to discover the other elements. *Rotella v. Wood*, 528 U.S. 549, 555–56 (2000) (emphasis added).

The injury at issue here is the violation of the plaintiff's First Amendment right to criticize the government without fear of retaliation, and that injury occurred upon the execution of the Search Warrant. Applying the discovery rule, the plaintiff learned about that injury in January 2020, when she obtained discovery from the prosecuting attorney. The fact that the plaintiff did not discover until June 2022 the "smoking gun" supporting her claim—in the form of Russ's testimony at Reguli's sentencing hearing about the motivation behind her desire to obtain a warrant

for the plaintiff's Facebook account—does not obviate the fact that Reguli knew about the Search Warrant and the execution of the Search Warrant in January 2020. That discovery put her on inquiry notice as to whether she had a cause of action based on the associated injury.

The fact that the plaintiff has equivocated about whether she adequately alleged in the original Complaint that the Search Warrant was not supported by probable cause does not actually change the analysis of when her cause of action accrued. As set forth above, the claim accrued when the plaintiff discovered the injury, not when she discovered all of the elements to support her claim. While the absence of probable cause is an element of her claim, the determination of whether an affidavit is supported by probable cause does not depend *either* on whether the defendant being investigated is later acquitted of the crimes charged *or* the officer's motivation in obtaining the warrant. This is because, "[w]hen determining whether an affidavit establishes probable cause, [courts] look only to the four corners of the affidavit; information known to the officer but not conveyed to the magistrate is irrelevant." *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). Thus, the plaintiff's assertion now that she could not affirmatively aver that the Search Warrant was not supported by probable cause until Hancock's conviction was overturned by the Tennessee Court of Criminal Appeals, thus vindicating Reguli's objection to the indictment and the framing of the elements of the crime of custodial interference, is simply incorrect. The plaintiff knew or should have known when she discovered the Search Warrant that it was not supported by probable cause. For the same reason, Russ's intent in obtaining the Search Warrant is irrelevant. The Search Warrant was either objectively supported by probable cause or it was not.

Regardless, the court finds that the original Complaint adequately alleges both that the Search Warrant was *not* supported by probable cause and that the plaintiff was in possession of

facts suggesting that it was motivated by a desire to retaliate, well before Russ testified at the sentencing hearing. Reguli alleges that, at the time Russ sought the Search Warrant,

> there was no missing child, there was no ongoing criminal activity, and Russ had already obtained the custodial interview of Wendy Hancock and the video evidence from a local hotel (showing Reguli with Hancock on the day in question.). The alleged criminal conduct occurred on August 15, 2018. Between August 15, 2018, and December 4, 2018 [when Russ applied for the Search Warrant], several [other] events occurred [calling into question DCS's motives]. Under information and belief, Defendant Russ had ongoing communications with others who wanted to silence Reguli. . . . The search warrant ultimately meant nothing to the criminal prosecution but allowed Russ and the others named to examine the personal communications of Plaintiff.

(Doc. No. 1 ¶ 4.) As the plaintiff argued in opposition to the defendants' Motion to Dismiss, she knew that the warrant "meant nothing" to the criminal prosecution, because Russ omitted from the Search Warrant Affidavit "any reference to a 'visitation order,'" as required by the custodial interference statute. (Doc. No. 18, at 3.) In addition, the plaintiff already knew that "government employees were stalking her social media." (*Id.* ¶ 2.) She warned the Brentwood Assistant Chief of Police in March 28, 2019 that the DCS's complaint against her was "a litigation tactic . . . to gain civil advantage." (*Id.* ¶ 16.) And, when she was indicted for custodial interference, the DA "changed the language of the statute removing essential language describing the 'actus reus' of the criminal conduct," and the plaintiff immediately challenged the indictment on the grounds that it was "fatally flawed" due to the changed language. (*Id.* ¶ 20.)

In other words, the plaintiff had all the information she needed to determine whether the Search Warrant was supported by probable cause when she obtained discovery in the underlying criminal case and learned of the existence of the Search Warrant. She also knew by then all of the other suspicious facts accompanying Russ's desire to obtain a warrant in the first place. The

plaintiff's attempt to characterize her "injury" as Russ's identification of the *motive* for seeking the Search Warrant is unavailing.[6]

The court finds, in short, that the Magistrate Judge did not err as a matter of law in concluding that the plaintiff's First Amendment claim accrued, at the latest, when the plaintiff discovered in January 2020 that the Search Warrant for her Facebook account had been issued and executed.

### C.  Fourth Amendment Claim

The plaintiff, in support of her Objections, argues that she adequately alleged that the Search Warrant was not supported by probable cause. Just in case, she has now sought leave to amend her Complaint to specifically allege the absence of probable cause, asserting that she could not allege an absence of probable cause until the Tennessee Court of Criminal Appeals issued its opinion reversing Hancock's conviction on the grounds that the elements of the crime were framed incorrectly in both the indictment and the jury instructions. As set forth above, however, the reversal of Hancock's conviction—which the plaintiff believes should imminently lead to the reversal of her own conviction—has no effect on the initial determination of whether the Search Warrant was supported by probable cause in the first place, a question resolved by looking at the Affidavit in support of the Search Warrant. *Brooks*, 594 F.3d at 492.

Moreover, it is clear that the plaintiff's Fourth Amendment claim does not fall within the scope of *Heck v. Humphrey*, 512 U.S. 477 (1994). If *Heck* applied, it would mean that the plaintiff's Fourth Amendment claim would not accrue until her underlying conviction has actually

---

[6] The plaintiff's position is not unlike that of a claimant alleging employment discrimination in violation of federal law. In such cases, the applicable injury occurs, and the applicable limitations period beings to run, when the plaintiff suffers the allegedly discriminatory action, not when she is able to garner direct evidence that the action was motivated by discrimination on the basis of some protected characteristic.

been reversed. *Heck* was not a statute of limitations case, but it "helped outline[] the contours and distinctions between habeas corpus actions and section 1983 damage actions." *Hamann v. Charter Twp. of Van Buren*, No. 20-10849, 2021 WL 534487, at *4–5 (E.D. Mich. Feb. 11, 2021). In it, the Court reaffirmed that, when a plaintiff brings a civil rights action under § 1983 that "challenges the fact or duration of his confinement and seeks immediate or speedier release," the case must be viewed as a habeas corpus action and state remedies must be exhausted. *Heck*, 512 U.S. at 481 (citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). Thus, the Court held, if a plaintiff's § 1983 claim "would necessarily imply the invalidity of his conviction or sentence," then " the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated" by, for example, reversal on direct appeal. *Id.* at 487. The plaintiff here admits that none of the evidence obtained by the Search Warrant was introduced at trial, so a challenge to the Search Warrant would not implicate the validity of her underlying conviction. *Heck*, therefore, does not apply. *Accord Harper v. Jackso*n, 293 F. App'x 389, 390 (6th Cir. 2008) (holding that *Heck* did not bar the plaintiff's Fourth Amendment claims where it was not clear that his underlying conviction "would be impugned by concluding that the officers obtained the evidence illegally").

Because *Heck* does not apply, the plaintiff's Fourth Amendment claim accrued, at the latest, on the date she discovered that the illegal search had taken place. *Accord Harper*, 293 F. App'x at 391 n.1 (finding that, because *Heck* did not apply, the plaintiff's Fourth Amendment claim accrued on "the date of the alleged illegal search and seizure"); *Hamann v. Charter Twp. of Van Buren*, No. 20-10849, 2021 WL 534487, at *5 (E.D. Mich. Feb. 11, 2021) ("[T]he Sixth Circuit and district courts in the circuit consistently have held that a section 1983 claim for an improper search and seizure of property accrues on the date the search and seizure takes place."

(collecting cases)). The fact that the Tennessee Court of Criminal Appeals has now vindicated the plaintiff's reading of the statute in effect at the time of her prosecution is immaterial.

### D.    Application of Tolling on the Basis of Fraudulent Concealment

"Not only the length of the limitations period, but also 'closely related questions of tolling are governed by state law," *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005) (internal quotation marks and citation omitted), "as long as that law is not inconsistent with federal law," *Hardin v. Straub*, 490 U.S. 536, 538 (1989) (citations omitted). The plaintiff here argues that the statute of limitations, as applied to both her First Amendment and Fourth Amendment claims, should be tolled by Tennessee's fraudulent concealment doctrine of tolling. (Doc. No. 18, at 8–9.) She objects to the Magistrate Judge's conclusion that the doctrine does not apply in this case.

The Tennessee Supreme Court has explained that the doctrine of fraudulent concealment applies to circumstances in which "the defendant purposefully engages in conduct intended to conceal the plaintiff's *injury* from the plaintiff" and "to circumstances in which the defendant engages in conduct intended to conceal the *identity of the person or persons who caused the plaintiff's injury* from the plaintiff." *Redwing v. Cath. Bishop for Diocese*, 363 S.W.3d 436, 462 (Tenn. 2012) (emphasis added). The doctrine has four elements:

> (1) that the defendant affirmatively concealed the plaintiff's injury or the identity of the wrongdoer or failed to disclose material facts regarding the injury or the wrongdoer despite a duty to do so; (2) that the plaintiff could not have discovered the injury or the identity of the wrongdoer despite reasonable care and diligence; (3) that the defendant knew that the plaintiff had been injured and the identity of the wrongdoer; and (4) that the defendant concealed material information from the plaintiff by withholding information or making use of some device to mislead the plaintiff in order to exclude suspicion or prevent inquiry.

*Id.* at 462–63 (quotation marks and footnoted citations omitted)

Reguli simply has not alleged facts supporting the elements of fraudulent concealment. She knew as of January 2020 both the injury (the execution of the Search Warrant for her Facebook

account that lacked probable cause) and the identity of the wrongdoer (Russ, who obtained the Search Warrant). The plaintiff's claim that Russ "concealed" her true motive for obtaining the Search Warrant until she testified at the sentencing hearing is immaterial, as the plaintiff had all the information she needed upon discovery of the existence of the Search Warrant to bring her First Amendment and Fourth Amendment claims.

Accordingly, the plaintiff's objection based on the Magistrate Judge's finding that Russ did not have a duty to disclose her true motive for seeking a warrant in the Search Warrant Affidavit is without merit. As discussed above, Russ's motive effectively has no bearing on the question of whether the warrant was supported by probable cause. And the plaintiff's assertion that Russ knew at the time she obtained the Search Warrant that she lacked probable cause to believe that the plaintiff had committed the crime of custodial interference cuts both ways. If Russ, a police officer, knew that it lacked probable cause, then the plaintiff, a lawyer, also clearly was on notice from the face of the Search Warrant and Search Warrant Affidavit that it lacked probable cause, again supporting the conclusion that the plaintiff was on inquiry notice of her claims from the time she received discovery in the criminal case.

Finally, the plaintiff objects that the Magistrate Judge "erred in denying the tolling of the statute of limitations for fraudulent concealment by finding that the allegations of influence by other state actors are 'too attenuated.'" (Doc. No. 28, at 17.) The court does not understand this objection but agrees with the Magistrate Judge that the plaintiff's "cat's paw" allegations that Russ was acting at the behest of unknown others simply has no bearing on whether the plaintiff's claims based on the Search Warrant are time-barred or subject to equitable tolling. The plaintiff has not brought claims against other defendants, and her speculation about whether Russ was motivated

by other individuals who also wanted to retaliate against the plaintiff for her protected speech is irrelevant to whether her claims against *Russ* are subject to tolling for fraudulent concealment.

In sum, contrary to her assertions, Reguli's allegations establish that she did not discover her *injury* when Russ testified in June 2022. Instead, she simply obtained additional proof of Russ's retaliatory motive, of which she was already on inquiry notice when she learned about the Search Warrant, in light of all of the other information already in her possession. The plaintiff's causes of action accrued in January 2020; they are not subject to tolling based on fraudulent concealment, and they expired under Tennessee' one-year statute of limitations in January 2021, almost two years before she filed suit.

## IV.     THE MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Because the plaintiff's claims are subject to dismissal with prejudice, the court will grant the defendants' Motion to Dismiss and deny the plaintiff's Motion and Memorandum to Amend Complaint. (Doc. No. 29.) The basis for the plaintiff's motion is that she was "unable, at the time of filing the Complaint[,] to state with certainty that Defendant Russ" lacked probable cause for the search warrant." (*Id.* at 2.) As set forth herein, the question of whether probable cause existed was verifiable from the face of the Search Warrant Affidavit, and the fact that the Tennessee Court of Criminal Appeals has reversed Hancock's conviction and completely vindicated the plaintiff's reading of the custodial interference statute then in effect has no effect on the viability of her claims.

## V.      CONCLUSION

As set forth herein, the plaintiff's objections are **OVERRULED**, and the R&R is **ACCEPTED** with the modifications noted herein. The defendants' Motion to Dismiss will be granted on the grounds that the plaintiff's claims are barred by the statute of limitations. The court does not reach the defendants' other arguments.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge